# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## EVANSVILLE DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) | CASE NO. 3:18-CV-174 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MOUNT VERNON, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Great American Insurance Company ("GAIC"), by counsel, for its Complaint for Declaratory Judgment against the City of Mount Vernon, Indiana ("City") states as follows:

## PARTIES

1. GAIC is a surety company incorporated under the laws of Ohio and domiciled in Cincinnati, Ohio and, therefore, is a citizen of Ohio.

2. The City is a political subdivision located in Posey County, Indiana and, therefore, is a citizen of Indiana.

## JURISDICTION AND VENUE

3. This lawsuit is brought for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the Federal Rules of Civil Procedure Rule 57, for the purposes of determining a question and actual controversy between the parties as hereunder more fully appears.

4. This action is currently ripe for adjudication.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the controversy is between citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) as the defendant resides in Posey County, Indiana and a substantial part of the events giving rise to this action occurred in Posey County, Indiana.

**FACTUAL BACKGROUND**

7. On or about May 19, 2016, the City entered into a construction contract ("Original Contract") with Peyronnin Construction Co. ("Peyronnin") for the construction of a project known as the Eastside Gravity Sewer project ("Project").

8. GAIC issued a performance bond ("Performance Bond") in connection with the Project naming Peyronnin as principal and the City as obligee.

9. On or about January 9, 2017, Peyronnin filed a Chapter 7 Voluntary Petition for Bankruptcy.

10. The City made a demand on the Performance Bond.

11. The City and GAIC entered into an agreement entitled "Tender and Release Agreement" wherein GAIC tendered Thieneman Construction, Inc. ("TCI") as a completion contractor to complete the Project.

12. A true and accurate copy of the Tender and Release Agreement is attached hereto as Exhibit 1.

13. The City and TCI entered into an agreement entitled "Contract Between Owner and New Contractor" ("Completion Agreement") wherein TCI agreed to complete the Project.

14. The Completion Agreement is incorporated by reference into the Tender and Release Agreement.

15. A true and accurate copy of the Completion Agreement is attached hereto as Exhibit B to the Tender and Release Agreement (See Exhibit 1).

16. On May 11, 2018, TCI filed an Amended Complaint against the City in the Posey County Circuit Court, Cause No. 65C01-1803-PL-000086, alleging, among other things, that "the City's failure to pay [TCI] pursuant to the terms of the [Completion Agreement] was a proper basis for termination of the Contract for cause; that [TCI] properly terminated the [Completion Agreement] for cause on February 9, 2018 pursuant to the terms and conditions of the [Completion Agreement]; that [TCI] owed no further duties or obligations to the City under the [Completion Agreement] once the [Completion Agreement] had been terminated for cause on February 9, 2018…"  (See Para. 54).

17. A true and accurate copy of the Amended Complaint is attached hereto as Exhibit 2.

18. TCI did not complete the entire Project before terminating the Completion Agreement for nonpayment, including repair and/or replacement of allegedly defective work installed by Peyronnin on the Project.

19. After TCI terminated the Completion Agreement for nonpayment, the City advised GAIC of its contention that GAIC is responsible for the repair and/or replacement of allegedly defective work installed by Peyronnin on the Project pursuant to the Tender and Release Agreement.

20. On August 16, 2018, counsel for GAIC informed the City's counsel that the City's failure to pay TCI and TCI's subsequent termination of the Completion Contract

discharged GAIC of any further obligations under the Tender and Release Agreement, including but not limited to the repair and/or replacement of allegedly defective work installed by Peyronnin on the Project.

21. On August 16, 2018, counsel for the City sent an email to GAIC's counsel contesting GAIC's interpretation of the Tender and Release Agreement in light of the City's failure to pay TCI and TCI's subsequent termination of the Completion Contract.

22. A true and accurate copy of the August 16, 2018 email from the City's counsel to GAIC's counsel is attached hereto as Exhibit 3.

23. On August 27, 2018, GAIC's counsel responded to the August 16, 2018 email by letter setting forth the language contained in the Tender and Release Agreement supporting GAIC's position that the City has failed to satisfy its obligations under the Tender and Release Agreement and, as a result, the City discharged GAIC of any further obligations under the Tender and Release Agreement.

24. A true and accurate copy of the August 27, 2018 letter from GAIC's counsel is attached hereto as Exhibit 4.

25. On August 30, 2018, the City's counsel responded to the August 27, 2018 letter of GAIC's counsel further contending that paragraph 4 of the Tender and Release Agreement obligates GAIC to be liable for the repair and/or replacement of allegedly defective work installed by Peyronnin on the Project despite TCI's termination of the Completion Agreement for non payment.

26. A true and accurate copy of the August 30, 2018 letter from the City's counsel is attached hereto as Exhibit 5.

**THE TENDER AND RELEASE AGREEMENT AND COMPLETION AGREEMENT**

27. GAIC reasserts and realleges paragraphs 1 through 26 of the Complaint as though fully restated herein.

28. Section 4 of the Tender and Release Agreement provides:

> [The City] agrees that, as of the Effective Date, all work performed on and materials incorporated into the Project by [Peyronnin] are in accordance with the [Original Contract] and acceptable to [the City], except conditions as are ordinarily not discoverable by routine visual examinations of the Work at this stage of construction and have not been known or discovered by [the City]. Notwithstanding the above, nothing contained herein operates as a waiver of any warranty obligations of [Peyronnin], and [GAIC] agrees to be bound by any contractual warranty of [Peyronnin].

29. Section 5 of the Tender and Release Agreement provides:

> In consideration of [GAIC's] Payment of $596,154.90 and the other good and valuable consideration described herein, [the City] does hereby expressly RELEASE, ACQUIT, and FOREVER DISCHARGE [GAIC] and it successors and assigns of and from any and all claims, rights, demands, and/or causes of action of whatsoever kind or nature which [the City] has or may ever claim to have, now or in the future, against [GAIC] under the Performance Bond ("Release of Surety"); provided however, that it is expressly understood and agreed by the Parties that the Release of Surety is qualified by the following exceptions:
>
> (a) [GAIC]'s obligations for latent defects shall survive the Release of Surety;
>
> (b) [The City] hereby expressly agrees (1) to accept the performance bond being furnished by [TCI] as the primary performance bond pertaining to [TCI]'s performance of the [Original Contract], (2) to credit the penal amount of the Peyronnin Performance Bond from its stated penal limit of $760,016.95 to the reduced amount of $163,862.05 representing the original amount of the Peyronnin Performance Bond less the Surety Payment, (3) that [the City] will at no time assert a claim against [GAIC] or the Performance Bond except in the event that [a] [TCI] should default upon its obligations hereunder and fail to cure any such default, causing [TCI] to be terminated, and [b] as a result of such default, [the City] calls upon the performance

        bond surety of [TCI] and the entire penal limits of the performance bond of [TCI] and its surety should be exhausted, and (3) that [GAIC] shall only have continuing potential exposure upon its Performance Bond, for any excess liability, if any, resulting from the aforementioned events; and [the City] further agrees that in the event that any such default of [TCI] should occur, [the City] will provide written notice of such event to [GAIC].

   (c)    GAIC agrees to defend, indemnify and hold harmless [the City] from any and all claims, demands, actions, causes of actions or lawsuits asserted by Peyronnin, by the Trustee, or anyone acting on Trustee's behalf, for recovery of contract funds held by [the City] at the time of Principal's bankruptcy filing or for any payments made by [the City] to Peyronnin.

   (d)    [GAIC]'s obligations for Liquidated Damages under the [Original Contract] shall survive the Release of Surety.

30.    The Completion Agreement provides:

(b)    New Contractor will promptly, upon the execution of this Contract, commence work on the Project and perform and complete the Project in accordance with the terms contained in this Agreement and the Contract between Original Contractor and the Owner, except:

    1)    The contract sum for the completion of the Project shall be the Contract Completion Sum stated below and subject to additions and deductions as provided in the Contract.

    2)    Time of commencement shall be September 21, 2017 ("Commencement"); substantial completion shall be achieved by New Contractor for the entire work no later than 120 after Commencement ("New Substantial Completion Date"); final completion shall be achieved by New Contractor for the entire work no later than 150 days after Commencement ("New Final Completion Date"), per the Contract between Owner and Original Contractor. Notwithstanding anything to the contrary in the Contract, the following scopes for work shall be excluded from Substantial Completion and Final Completion: all restoration, seeding and asphalt

      work ("Seasonal Work"). The Seasonal Work shall be completed by New Contractor on or before May 15, 2018. New Contractor shall be responsible for Liquidated Damages in the same amounts pursuant to and in the same amounts as specified in the Contract, if New Contractor does not achieve New Substantial Completion Date and New Final Completion Date.

  3) The Contract sum shall not be adjusted for work which was discoverable from the New Contractor's review of the information and Project as set forth in Section 1 above.

  4) New Contractor shall adopt Original Contractor's schedule of values for purposes of requesting payment from Owner. The reconciliation costs shown as an increase on Change Order No. 3, attached as **Exhibit D**, shall be included as a lump sum in the schedule of values. New Contractor shall invoice the reconciliation cost increase on Change Order No. 3 in four lump sum payment requests as follows: 30% of the reconciliation cost increase on Change Order No. 3 on each of the New Contractor's first three requests for payment and final 10% on New Contractor's final request for payment upon the final completion of the Project.

  5) New Contractor's work shall not be subject to any means or methods dictated by the Contract as clarified in **Exhibit E**.

  6) New Contractor's will be permitted to use the portions of the Project from the Pump Station to Station 114 for bypassing pumping, which Owner will accept as Substantially Complete as clarified in **Exhibit F**.

### COUNT I – DECLARATORY JUDGMENT

31. GAIC reasserts and realleges paragraphs 1 through 30 of the Complaint as though fully restated herein.

32. Section 5(b) of the Tender and Release Agreement provides that the City "**will at no time assert a claim against GAIC or its Performance Bond**," except in the event that:

>[a] [TCI] should default upon its obligations hereunder and fail to cure any such default, causing [TCI] to be terminated, and [b] as a result of such default, [the City] calls upon the performance bond surety of completion contractor and the entire penal limits of the performance bond of completion contractor and its surety should be exhausted, and (3) [GAIC] shall only have continuing potential exposure upon its Performance Bond, for any excess liability, if any, resulting from the aforementioned event…

33. TCI did not default under the Completion Agreement before TCI terminated the Completion Contract on February 9, 2018 for nonpayment.

34. TCI was not terminated by the City under the Completion Agreement before TCI terminated the Completion Contract on February 9, 2018 for nonpayment.

35. The City never made a demand upon TCI's performance bond under the Completion Agreement before TCI terminated the Completion Contract on February 9, 2018 for nonpayment.

36. Section 5(b) further provides that the City "further agrees that in the event that any such default of [TCI] should occur, [the City] will provide written notice of such event to [GAIC]."

37. The City never provided any written notice of default of TCI before TCI terminated the Completion Contract on February 9, 2018 for nonpayment.

38. TCI was obligated to perform and complete the "entire" Project in accordance with the terms of the Completion Agreement and Original Contract.

39. Specifically, the Completion Agreement provides:

>(b) New Contractor will promptly, upon the execution of this Contract, commence work on the Project and **perform and complete the Project in accordance with the terms contained in this Agreement and the Contract between Original Contractor and the Owner**, except:

1) The contract sum for the completion of the Project shall be the Contract Completion Sum stated below and subject to additions and deductions as provided in the Contract.

2) Time of commencement shall be September 21, 2017 ("Commencement"); **substantial completion shall be achieved by New Contractor for the entire work no later than 120 after Commencement ("New Substantial Completion Date"); final completion shall be achieved by New Contractor for the entire work no later than 150 days after Commencement ("New Final Completion Date")**, per the Contract between Owner and Original Contractor. Notwithstanding anything to the contrary in the Contract, the following scopes for work shall be excluded from Substantial Completion and Final Completion: all restoration, seeding and asphalt work ("Seasonal Work"). The Seasonal Work shall be completed by New Contractor on or before May 15, 2018. New Contractor shall be responsible for Liquidated Damages in the same amounts pursuant to and in the same amounts as specified in the Contract, if New Contractor does not achieve New Substantial Completion Date and New Final Completion Date.

3) The Contract sum shall not be adjusted for work which was discoverable from the New Contractor's review of the information and Project as set forth in Section 1 above.

4) New Contractor shall adopt Original Contractor's schedule of values for purposes of requesting payment from Owner. The reconciliation costs shown as an increase on Change Order No. 3, attached as **Exhibit D**, shall be included as a lump sum in the schedule of values. New Contractor shall invoice the reconciliation cost increase on Change Order No. 3 in four lump sum payment requests as follows: 30% of the reconciliation cost increase on Change Order No. 3 on each of the New Contractor's first three requests for payment and final 10% on New Contractor's final request for payment upon the final completion of the Project.

        5)      New Contractor's work shall not be subject to any means or methods dictated by the Contract as clarified in **Exhibit E**.

        6)      New Contractor's will be permitted to use the portions of the Project from the Pump Station to Station 114 for bypassing pumping, which Owner will accept as Substantially Complete as clarified in **Exhibit F**.  (emphasis added).

40.    None of the aforementioned six exceptions to TCI's obligation under the Completion Contract to "perform and complete the Project in accordance with the terms contained in [Completion Contract] and the Contract between Original Contractor and the Owner" exist.

41.    TCI was prevented from performing and completing the "entire" Project as a result of the City's nonpayment.

42.    There is a legitimate dispute between the parties as to the application of the Tender and Release Agreement to TCI's termination of the Completion Agreement for nonpayment, which occurred prior to the City satisfying all conditions giving rise to the City's contractual right to assert a claim against GAIC under Section 5(b) of the Tender and Release Agreement.

WHEREFORE, GAIC, by counsel, respectfully requests that this Court grant the following relief: (a) a judgment declaring that the Tender and Release Agreement bars any claims asserted by the City against GAIC as a result of TCI's prior termination of the Completion Contract; (b) for costs of this action; and (c) for all other just and proper relief in the premises.

FROST BROWN TODD LLC


By: */s/ Daniel P. King*
    Daniel P. King, #23025-49
    201 N. Illinois St., Suite 1900
    P.O. Box 44961
    Indianapolis, IN  46244-0961
    317-237-3800
    Fax: 317-237-3900
    dking@fbtlaw.com
    Attorneys for Plaintiff

LR01907.0643960   4827-8754-1874v1
9/11/2018